Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ISRAEL KOPEL AMSTER Y OTROS<br><br>RECURRIDOS<br><br>v.<br><br>MARCELINO BELLOSTA VARADY Y OTROS<br><br>**MAPFRE PRAICO INSURANCE COMPANY**<br><br>PETICIONARIOS | KLCE202400983<br><br>Consolidado con | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm. BY2020CV01468<br><br>Sobre: Daños y Perjuicios |
| ISRAEL KOPEL AMSTER Y OTROS<br><br>RECURRIDOS<br><br>v.<br><br>MARCELINO BELLOSTA VARADY Y OTROS<br><br>**MARCELINO BELLOSTA VARADY Y TRIPLE S PROPIEDAD, INC.**<br><br>PETICIONARIOS | KLCE202400995 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm. BY2020CV01468<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Bonilla Ortiz y el Juez Pagán Ocasio.

Pagán Ocasio, juez ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 11 de octubre de 2024.

### I.

El 13 de septiembre de 2024, MAPFRE PRAICO Insurance Company (MAPFRE) presentó una *Petición de Certiorari* en la que solicitó que revoquemos una *Resolución* emitida, notificada y archivada digitalmente en autos por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro primario) el 28 de

junio de 2024.[1] En el dictamen, el TPI declaró No Ha Lugar una solicitud de sentencia sumaria promovida por MAPFRE, como presunta aseguradora de Sea Shore Environmental LLC (Sea Shore) para que se desestimara con perjuicio el pleito de daños y perjuicios promovido en su contra por la Sucesión de Israel Kopel Amster, compuesta por sus hijos Sasha, Dave, Stephen y Daniel Kopel Ballester (parte recurrida). A juicio del foro primario, existían hechos materiales en controversia. Ese recurso recibió el alfanumérico KLCE202400983.

Por otra parte, el 16 de septiembre de 2024, el señor Marcelino Bellosta Varady y Triple S Propiedad, Inc., (señor Bellosta Varady y Triple S) radicaron una *Petición de Certiorari* en la que solicitaron que revoquemos una *Resolución* emitida por el TPI el 1 de julio de 2024.[2] En ese dictamen, el foro primario declaró No Ha Lugar una solicitud de sentencia sumaria presentada por el señor Bellosta Varady y Triple S. Ese recurso recibió el alfanumérico KLCE202400995.

El 17 de septiembre de 2024, en el KLCE202400983, emitimos una *Resolución* en la que le concedimos a la parte recurrida un término de diez (10) días para exponer su posición sobre los méritos del recurso.

Ese mismo día, en el KLCE202400995, emitimos otra *Resolución* en la que le concedimos a la parte recurrida el mismo término para expresarse sobre los méritos de ese recurso.

El 20 de septiembre de 2024, la parte recurrida presentó una *Solicitud de orden de consolidación de recursos de certiorari* en la que solicitó que consolidáramos ambos recursos y que le concediéramos

---

[1] Apéndice de KLCE202400983, Anejo XXIII, págs. 935-968.
[2] Apéndice del KLCE202400995, págs. 1869-1891. Notificada y archivada digitalmente en autos al día siguiente.

un término adicional para presentar su oposición a la expedición de estos.

El 23 de septiembre de 2024, emitimos una *Resolución* en la que, como excepción, ordenamos la consolidación de ambos recursos por versar sobre dos determinaciones en el mismo caso. A su vez, a la parte recurrida le concedimos un término final hasta el 4 de octubre de 2024 para exponer su posición sobre lo argumentado en ellos.

El 4 de octubre de 2024, la parte recurrida radicó una *Oposición a la expedición de autos de certiorari consolidados* en la que solicitó que rechacemos la expedición de los autos solicitados.

Contando con el beneficio de la comparecencia de las partes, damos por perfeccionado los recursos. En adelante, pormenorizaremos los hechos procesales pertinentes a la atención de las peticiones de *Certiorari* consolidadas de epígrafe.

**II.**

El caso de marras tiene su génesis el 7 de abril de 2020 cuando el señor Israel Kopel Ballester (señor Kopel Ballester) y los demás miembros de la parte recurrida presentaron ante el TPI una *Demanda* en reclamo de daños y perjuicios por el sufrimiento y la muerte de la señora Josefina Manuela Ballester Cabrera, esposa del señor Kopel Ballester y madre de los demás miembros de la parte recurrida.[3] En la reclamación, se le imputó responsabilidad a los demandados por la muerte de la señora Ballester Cabrera tras un accidente de tránsito ocurrido en Guaynabo en el que fue arrollada por un camión que participaba en las obras de construcción de una residencia en una urbanización. La *Demanda* fue presentada en contra de Marcelino Bellosta Varady, Juan Carlos Méndez Rivera, Antonio Medina Eliza, Hacienda La Carmen, L Star Transport Corp.,

---

[3] Apéndice de KLCE202400983, Anejo I, págs. 1-30.

First Pick Trucks and Tires LLC, entre otros. En específico, el señor Bellosta Varady fue incluido por ser el dueño de la estructura en la que se llevaron a cabo las obras.

Luego de presentado, este caso ha tenido un prolongado trámite procesal, demostrado por las más de 700 entradas que ostenta el expediente digital en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). Para atender este recurso, no hace falta consignar todo ese trámite, excepto en lo siguiente, dada su pertinencia a cada recurso.

Como parte del trámite del caso, Sea Shore fue traída al pleito por ser una compañía vinculada a las obras de construcción relacionadas al accidente. A su vez, MAPFRE fue incluida como alegada aseguradora de Sea Shore. Asimismo, se añadió al presidente de Sea Shore, el señor Jesús Burgos Ayala (señor Burgos Ayala) en su carácter personal, y a MAPFRE como su aseguradora.

Cabe reseñar igualmente que, el 26 de abril de 2021, el TPI emitió, notificó y archivó digitalmente en autos una *Resolución* en la que rechazó una solicitud de sentencia sumaria desestimatoria realizada por MAPFRE en su primera comparecencia.[4] En esa ocasión, el foro primario determinó que existía controversia sobre si la póliza expedida por MAPFRE a favor del señor Burgos Ayala incluía la actividad comercial de Sea Shore. Al respecto, en su alegación responsiva a la reclamación, Sea Shore había esbozado que, al momento de los hechos, MAPFRE había extendido una póliza de responsabilidad general a nombre del señor Burgos Ayala DBA SSE[5], pero que no venía obligada a responder. Entretanto, MAPFRE había planteado que la póliza no alcanzaba a Sea Shore como corporación ajena al señor Burgos Ayala, sino únicamente al DBA.

---

[4] Entrada Núm. 369 del expediente digital del caso en el SUMAC.
[5] En específico, la póliza describía al asegurado como "ING JESUS BURGOS AYALA DBA SSE". Es decir, "*Doing Business as Sea Shore Environmental".*

Posteriormente, luego de múltiples trámites adicionales, el 30 de octubre de 2023, MAPFRE radicó una *Moción de sentencia sumaria a tenor con la Regla 36.3 de Procedimiento Civil* en la que solicitó al TPI que desestimara toda reclamación en su contra por ser la alegada aseguradora de Sea Shore.[6] Según alegó, al momento del accidente no existía una póliza vigente, ni expedida por MAPFRE a favor de Sea Shore. En cambio, planteó que la aseguradora únicamente expidió una póliza a favor del señor Burgos Ayala en su carácter personal, quien además hacía negocios como Sea Shore Environmental. En ese sentido, esbozó que el señor Burgos Ayala no representaba a la corporación Sea Shore cuando hacía negocios por cuenta propia bajo ese nombre, utilizándolo como *Doing Business As* (DBA). Por eso, arguyó que la corporación Sea Shore quedó excluida de cubierta por la póliza. Además, argumentó que, aunque se determinara que MAPFRE expidió una póliza con cubierta a favor de Sea Shore, esa compañía no podía ser responsabilizada por el incidente que causó los daños en este caso.

Para sustentar sus alegaciones, acompañó su solicitud con: (1) una declaración jurada de la gerente de suscripción, propiedad y contingencia de MAPFRE; (2) el *Certificado de incorporación* de Sea Shore; (3) un *Primer pliego de interrogatorio, solicitud de producción de documentos y requerimiento de admisiones*, así como la contestación al mismo; (4) la póliza expedida a favor del señor Burgos Ayala; (5) una declaración jurada emitida por Sea Shore, representada por el señor Burgos Ayala; (6) el *Certificado de organización* de Sea Shore; (7) una porción de la transcripción de la deposición tomada al señor Burgos Ayala; (8) un cheque emitido por Alpha Demolitions, Inc. a favor del señor Burgos Ayala; (9) una porción de la transcripción de la deposición tomada al ingeniero Iván

---

[6] Apéndice de KLCE202400983, Anejo XIX, págs. 276-399.

J. Baigés Valentín (perito Baigés Valentín), ingeniero y perito de la parte recurrida; (10) un certificado de la cubierta expedida a favor del señor Burgos Ayala; y (11) el *Informe de accidente de tránsito* emitido por la Policía de Puerto Rico sobre el incidente central de la reclamación.

Ese mismo día, el señor Bellosta Varady y Triple S presentaron una *Moción de en [sic] solicitud de sentencia sumaria* en la que solicitaron al TPI que desestimara con perjuicio la causa de acción instada en su contra.[7] Según alegaron, el señor Bellosta Varady, como dueño de la propiedad, contrató para ejecutar labores de demolición a una compañía con experiencia en la construcción, la cual, a su vez, subcontrató los servicios de demolición con otra compañía que también subcontrató los servicios de acarreo, los camiones y sus conductores. Por eso, arguyeron que el accidente, ocurrido fuera de los predios del área de demolición, no era previsible para el señor Bellosta Varady y no se relacionaba a las gestiones inherentes de la obra. Asimismo, plantearon que el uso de camiones de acarreo es una práctica común y rutinaria de la demolición y no una actividad inherentemente peligrosa. Por ello, esbozaron que el señor Bellosta Varady y, por consiguiente, Triple S no podían ser responsabilizados.

En apoyo de su solicitud, incluyeron: (1) una porción de la transcripción de la deposición tomada al señor Bellosta Varady; (2) dos correos electrónicos intercambiados entre el señor Bellosta Varady y el presidente de Bayside Builders; (3) un correo electrónico enviado a Alpha Demolitions por el presidente de Bayside Builders; (4) una porción de la transcripción de la deposición tomada al señor Antonio Medina Eliza, contratista de demolición de Alpha Demolition; (5) una porción de la transcripción de la deposición

---

[7] Apéndice del KLCE202400995, págs. 235-355.

tomada al señor Ernesto Riefkohl Miranda, presidente de Bayside Builders; (6) una *Carta de autorización* emitida por el señor Bellosta Varady en la que autorizó a Alpha Demolitions a tramitar permisos de demolición para las obras involucradas en este caso; (7) un intercambio de correos electrónicos entre el señor Bellosta Varady y la administración de la urbanización San Patricio; (8) un *Permiso para demolición de estructuras* emitido por la *Urban Permits Office* del Municipio de Guaynabo y el *Memorial Explicativo* para obtenerlo; y (9) el informe pericial preparado por el perito Baigés Valentín, así como una porción de la transcripción de su deposición.

El 28 de diciembre de 2023, la parte recurrida radicó una *Oposición a moción de sentencia sumaria de MAPFRE PRAICO INSURANCE COMPANY como alegado asegurador de Sea Shore Environmental LLC* en la que solicitó al TPI que declarara No Ha Lugar la solicitud de MAPFRE.[8] Según expuso, MAPFRE no hizo distinción en la póliza entre la cubierta extendida al señor Burgos Ayala, quien hizo negocios como Sea Shore Environmental y Sea Shore como una corporación y entidad jurídica. Por eso, planteó que existía controversia sobre si la cobertura expedida por MAPFRE, vigente a la fecha del accidente, alcanzaba a Sea Shore. Además, recordó que el foro primario había rechazado una primera solicitud de sentencia sumaria por entender que existía controversia respecto a la cobertura de la póliza y que, en comparación con esa ocasión, MAPFRE no adujo fundamento o evidencia nueva que disipara dicha controversia.

Ese mismo día, la parte recurrida presentó una *Oposición a moción de sentencia sumaria de Marcelino Bellosta Varady/Triple S Propiedad* en la que arguyó que no procedía la desestimación de la acción en contra del señor Bellosta Varady y Triple S.[9] En síntesis,

---

[8] Apéndice de KLCE202400983, Anejo XX, págs. 400-914.
[9] Apéndice del KLCE202400995, págs. 356-1845.

sostuvo que la actividad de acarreo de escombros, contratada por el señor Bellosta Varady, creó riesgos especiales y particulares previsibles a este, quien no era ajeno a la ejecución diaria de la obra, llevada a cabo al lado de su residencia. Por ello, esbozó que no debía ser relevado de responsabilidad como dueño y principal de la obra, especialmente ante la ausencia de vigilancia y medidas para controlar el tráfico de peatones.

El 12 de enero de 2024, MAPFRE radicó una *Réplica a oposición a moción de sentencia sumaria como alegado asegurador de Sea Shore Environmental LLC* en la que argumentó que la oposición de la parte recurrida incumplió los requisitos de la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V., R. 36, porque no detalló evidencia admisible para controvertir los hechos alegados.[10] Asimismo, reiteró que el TPI debía determinar que MAPFRE no había extendido póliza alguna a favor de Sea Shore como entidad jurídica distinta al señor Burgos Ayala. Por ello, adujo que sería temerario mantener a MAPFRE como aseguradora de esa entidad sin que existiera una póliza.

Ese mismo día, el señor Bellosta Varady y Triple S presentaron una *Réplica a oposición a sentencia sumaria* en la que reiteraron su solicitud de sentencia sumaria desestimatoria.[11]

El 30 de enero de 2024, la parte recurrida radicó una *Dúplica a réplica a oposición a moción de sentencia sumaria de MAPFRE como alegado asegurador de Sea Shore Environmental LLC* en la que negó el planteamiento de temeridad de MAPFRE y esbozó que las alegaciones en su contra fueron sustentadas por documentos provistos en el descubrimiento de prueba.[12]

---

[10] Apéndice de KLCE202400983, Anejo XXI, págs. 915-931.
[11] Apéndice del KLCE202400995, págs. 1846-1857.
[12] Apéndice de KLCE202400983, Anejo XXII, págs. 932-934.

Ese mismo día, la parte recurrida también presentó una *Dúplica a réplica a oposición a moción de sentencia sumaria de Marcelino Bellosta Varady* en la que reiteró sus argumentos en refutación de las defensas del señor Bellosta Varady y Triple S.[13]

El 28 de junio de 2024, el TPI emitió, notificó y archivó digitalmente en autos la *Resolución* recurrida en el KLCE202400983 en la que declaró No Ha Lugar la solicitud de sentencia sumaria promovida por MAPFRE, resolviendo que existían hechos materiales en controversia.[14] En vista de ello, ordenó la continuación de los procedimientos para dirimir los asuntos en disputa.

Como hechos incontrovertidos, el foro primario formuló los siguientes:

> 1. El 30 de abril de 2019, se realizaba una obra de demolición de una estructura residencial en la Propiedad #20 ubicada en la calle Manuel Ferrer Rivera de la Urbanización San Patricio, cuyo dueño es el señor Marcelino Bellosta Varady.
>
> 2. Según el Informe de accidente de tránsito de la Policía de Puerto Rico, el 30 de abril de 2019, el conductor del Auto #1 (camión con arrastre) inició la marcha en retroceso y no se percató de la presencia de la señora Ballester, de 67 años, arrollándola con la goma trasera, lo que le ocasiona heridas, que le causaron la muerte.
>
> 3. El señor Bellosta, contrató a Bayside Builders para realizar el proyecto de la demolición de la propiedad #20.
>
> 4. Bayside Builders —contratista general del proyecto de demolición— le subcontrató el proyecto de demolición (permisos, remoción y acarreo de escombros) de la propiedad #20 a Alpha Demolitions, Inc.
>
> 5. El 27 de marzo de 2019, Alpha subcontrató a Sea Shore Environmental a través del Ing. Jesús Burgos Ayala, para la remoción y acarreo de los escombros producto de la demolición de la propiedad #20.
>
> 6. Al 30 de abril de 2019, Sea Shore Environmental, era una corporación inscrita en el Departamento de Estado del Estado Libre Asociado de Puerto Rico.
>
> 7. El agente residente y presidente de Sea Shore Environmental es el Ing. Burgos, con quien comparte la misma dirección física y postal.
>
> 8. Al 30 de abril de 2019, el Ing. Burgos estuvo presente en la propiedad #20, aunque no presenció el infortuniuo [sic].

---

[13] Apéndice del KLCE202400995, págs. 1857-1868.
[14] Apéndice de KLCE202400983, Anejo XXIII, págs. 935-968.

9. El 10 de agosto de 2018, el Ing. Burgos le solicitó al corredor de seguros, Peter Machín, que incluyera a: Jesús M. Burgos Ayala DBA SSE, como asegurado adicional.

10. Ese mismo día, se brindó un endoso que cambió la póliza al incluir como el nombre asegurado al Ing. Jesús Burgos Ayala DBA SSE.

11. El Ing. Burgos contrató los servicios de acarreo con First Pick Trucks and Tires, LLC., quien, a la fecha de los hechos, era la dueña del camión Kenworth.

12. El *Informe de accidente de tránsito* de la Policía de Puerto Rico expone que, al momento del incidente, el conductor del Auto #1 (el camión marca Kenworth 999, tablilla PP-8005 de 1994) era el señor Luis Urbano Burgos Echevarría.

13. El 7 de abril de 2020, la parte demandante presentó la demanda de epígrafe.

14. La parte demandante anunció al Ing. Iván Baigés Valentín, como su perito en materia de negligencia y reconstrucción de accidentes.

15. El 31 de mayo de 2022, el Ing. Baigés, presentó un informe pericial, sobre el caso de epígrafe.[15]

En contraste, resolvió que los siguientes hechos estaban en controversia:

1. Si el realizar una obra de demolición y acarreo de escombros dentro de una urbanización con acceso controlado y sin aceras, es una actividad inherentemente peligrosa. Dicho de otro modo, si la obra de demolición presentó riesgos peculiares previsibles que ameritaban la implementación de medidas de seguridad especiales.

2. Si era previsible la necesidad de establecer medidas de seguridad para proteger el tráfico y los peatones.

3. Si a base de la prueba presentada, la causa adecuada del accidente fue la imprudencia y/o negligencia del conductor, por lo que el dueño del proyecto queda exonerado de responsabilidad.

4. Si no era previsible que las partes contratadas para la realización del proyecto no tomaran medidas básicas y mínimas en el manejo de un camión para llevar a cabo sus trabajos.

5. Si la prueba de la parte demandante establece que los codemandados actuaron negligentemente u ocasionaron el accidente en cuestión.

6. Si Alpha contrató a Sea Shore Environmental a través del Ing. Burgos para el recogido, acarreo y disposición de los escombros.

7. Si Sea Shore Environmental tuvo alguna participación en la cadena de eventos que culminaron en el infortunio.

**8. Si el hecho de que el Ing. Burgos derivó beneficios económicos de las gestiones de Sea Shore Environmental**

---

[15] Íd., págs. 951-952.

**constituye un nexo causal entre los actos de esta y los daños alegados.**

**9. Si Sea Shore Environmental es un "alter ego" o conducto económico pasivo del Ing. Burgos, por lo que se debería develar el velo corporativo, al comportarse como una sola entidad.**

**10. Si la causa de acción contra Mapfre como presunta aseguradora de Sea Shore Environmental, debe ser desestimada ante la ausencia de póliza expedida a favor de dicha entidad corporativa.**

**11. Si la intención del Ing. Burgos era darle cubierta a Sea Shore, al solicitarle a Mapfre que la incluyera en su póliza.**

**12. Si Mapfre derivó beneficios económicos del Ing. Burgos al este solicitarle a Mapfre que incluyera a Sea Shore Environmental en su póliza.**

**13. Si Mapfre como entidad en la industria de seguros debió saber o corroborar que Sea Shore Environmental era una entidad jurídica independiente antes de incluir a Sea Shore en la póliza del Ing. Burgos como un DBA.** (Ennegrecido nuestro).[16]

El 1 de julio de 2024, el TPI emitió la *Resolución* recurrida en el KLCE202400995 en la que declaró No Ha Lugar la solicitud de sentencia sumaria promovida por el señor Bellosta Varady y Triple S.[17]

Como parte del dictamen, formuló los siguientes hechos incontrovertidos:

1. El Sr. Marcelino Bellosta Varady compró la propiedad residencial ubicada en la Calle Nogal #2 de la Urbanización San Patricio (Propiedad #2), en el año 2016.

2. El Sr. Marcelino Bellosta Varady compró la propiedad residencial #20 en la Calle Manuel Rivera Ferrer de la Urbanización San Patricio (Propiedad #20) en el año 2018.

3. Las propiedades residenciales #2 y #20 son colindantes.

4. El codemandado, Sr. Marcelino Bellosta Varady, contrató a Bayside Builders, para realizar una obra de demolición de una estructura residencial en la Propiedad #20, ubicada en la calle Manuel Rivera Ferrer de la Urbanización San Patricio.

5. Conforme a la Solicitud de Permiso de Demolición, la descripción del trabajo de demolición fue la siguiente:

   Demolición de estructura de una planta y un sótano de aproximadamente 4,750.00 pies

---

[16] Íd., págs. 952-953.
[17] Apéndice del KLCE202400995, págs. 1869-1891. Notificada y archivada digitalmente en autos al día siguiente.

cuadrados en hormigón con marquesina para dos automóviles.

6. El Informe de Accidente de Tránsito de la Policía de Puerto Rico indicó que, el 30 de abril de 2019, el conductor del camión marca Kenworth 999, Tablilla PP-8005 de 1994, inició la marcha en retroceso y no se percató del peatón, la Sra. Josefina Ballester Cabrera, de 67 años y la arroyó con la goma trasera. Las heridas recibidas por la Sra. Josefina Ballester Cabrera le causaron la muerte.

7. Según el Informe de Accidente de Tránsito de la Policía de Puerto Rico, el 30 de abril de 2019, Luis Urbano Burgos Echevarría conducía el camión, marca Kenworth 999, Tablilla PP-8005 de año 1994.

8. La Urbanización San Patricio cuenta con control de acceso que ubica al inicio del punto Norte de la Calle Principal.

9. La Urbanización San Patricio no cuenta con aceras.

10. Para la fecha de ocurrencia del accidente, el Sr. Marcelino Bellosta Varady tenía una póliza de responsabilidad pública con Triple S Propiedad, con número PP-41108497-0003-0000. Dicha póliza tenía un límite de $1,000,000.00.

11. A preguntas sobre la proximidad del proyecto de demolición en relación con su residencia en la Calle Nogal, el Sr. Bellosta Varady testificó lo siguiente:
> [m]i habitación da hacia ese lindero del solar de la calle Nogal. Había una verja, o sea, muchas matas y quizás 50 metros de donde estaba mi almohada estaba la demolición. O sea, que yo le pasaba por el lado y en las mañanas escuchaba las máquinas, o sea me levantaban las máquinas.

12. Bayside Builders, contratista general del proyecto de demolición, le adjudicó por carta subcontrato del proyecto de demolición a llevarse a cabo en la Propiedad #20 a Alpha Demolitions, Inc.

13. La parte demandante anunció al Ing. Iván Baigés, como su perito en materia de negligencia y reconstrucción de accidentes.

14. El 31 de mayo de 2022, el perito de la parte demandante, Ing. Iván Baigés Valentín, presentó un informe pericial, sobre el caso de epígrafe (informe pericial).

15. El 18 de septiembre de 2018, Bayside Builders, a través del Ing. Riefkohl, le hizo al Sr. Marcelino Bellosta Varady una propuesta por escrito para cotizar los trabajos de demolición. Esta gestión incluía el estudio ambiental, permisos de demolición, pólizas de responsabilidad pública y Corporación del Fondo del Seguro del Estado, supervisión, personal, equipos, combustible; demolición y disposición de escombros, entre otros.

16. El 26 de octubre de 2018, el Sr. Marcelino Bellosta Varady aceptó la propuesta para los trabajos de demolición del proyecto mediante una carta. Esta carta

expresó que el contrato incluyó los servicios de fabricación, instalación y uso de cualquier mecanismo de seguridad requerido por OSHA y necesario en el proyecto para la protección de sus empleados.

17. Posteriormente, Bayside Builders determinó otorgar la totalidad del contrato de demolición a Alpha.

18. El Sr. Sebastián Colberg, en representación de Bayside Builders, aceptó la propuesta de Alpha para los trabajos de demolición del proyecto, el 26 de octubre de 2018, mediante una carta.

19. Los compromisos suscritos por Alpha incluyeron la fabricación, instalación y cualquier mecanismo de seguridad requerido por OSHA y necesario en el proyecto para la protección de sus empleados.

20. El 8 de enero de 2019, el Sr. Marcelino Bellosta Varady autorizó, mediante carta, a Alpha a tramitar los permisos de demolición correspondientes para proceder con los trabajos y servicios contratados.

21. Mediante correo electrónico, el 5 de abril de 2019, el Sr. Marcelino Bellosta Varady le notificó a la Administración de la Urbanización San Patricio, sobre la demolición de la casa en la Propiedad #20. Además, notificó que estaba en la espera del permiso final para la demolición por parte del Municipio para poder comenzar la obra.

22. El Sr. Marcelino Bellosta Varady le solicitó a la Administración y Junta Directiva de la Urbanización San Patricio que le comunicaran cualquier aclaración o sugerencia relacionada con la obra de demolición.

23. El 8 de abril de 2019, el Municipio de Guaynabo expidió el Permiso para Demolición de Estructuras, número #2019-00207-DTC, correspondiente a la Propiedad #20, perteneciente al Sr. Marcelino Bellosta Varady.

24. El Permiso para Demolición de Estructuras fue gestionado por Alpha, según pactado.

25. First Pick Trucks and Tires, LLC era la dueña del Camión Kenworth, modelo 999 del año 1994, color blanco, tablilla RP-8005.

26. First Pick Trucks and Tires, LLC fue contratada para transportar, el 30 de abril de 2019, los escombros que fueron producto de la obra de demolición.

27. La prueba pericial de la parte demandante consiste en el testimonio del Ing. Iván Baigés Valentín, quien mediante su informe pericial explicó que su trabajo se enfocó en: 1) evaluar las condiciones prevalecientes al momento del accidente tales como geometría, visibilidad y otras, 2) evaluar las acciones de la señora Josefina Ballester y de los conductores de los camiones Luis Burgos Echevarría y Juan Méndez Rivera y 3) determinar cómo las acciones de cada parte y las condiciones del lugar influenciaron en el accidente.

28. El Ing. Iván Baigés afirmó que su rol como perito del caso fue realizado como experto en reconstrucción de

accidentes; no es experto en gerencia de proyectos; no es experto en supervisión e inspección de obras de construcción y no es experto en MOT ("maintenance of traffic").

29.   El Ing. Baigés concluyó que "el dueño del proyecto y todos los contratistas envueltos... fueron negligentes por no asegurarse de que se implantaran ni se cumplieran medidas de seguridad, incluyendo personal para dirigir el tránsito y a los camiones para así evitar que el camión Kenworth manejado por el señor Luis Burgos Echevarría atropellara mientras daba reversa a la señora Josefina Ballester y así evitar causarle las heridas que le provocaron su muerte."

30.   El Ing. Baigés testificó que los demandados tenían un deber, algunos de exigir y otros de implementar un plan de maniobras para la remoción.

31.   En cuanto al Sr. Marcelino Bellosta Varady, el Ingeniero Baigés expresó que:
   a. Fue prudente que el dueño, que no tiene experiencia en el campo de construcción, descansara en las compañías de construcción contratadas para llevar a cabo las medidas de seguridad.
   b. Fue prudente y razonable que el Sr. Marcelino Bellosta Varady le comunicara a la Administración de la Urbanización San Patricio sobre la realización de la obra de demolición

32.   Sobre la obra de demolición, el Ing. Baigés manifestó lo siguiente:
   a. El accidente ocurrió fuera de la Propiedad #20.
   b. El accidente no ocurrió mientras el camión entraba a la Propiedad #20.
   c. El accidente no ocurrió mientras el camión salía del solar de la Propiedad #20.

33.   Según el Informe Pericial, operar camiones como el Camión Kenworth, en una zona residencial, por una vía pública sin aceras es una actividad inherentemente peligrosa y el peligro aumenta cuando se hacen maniobras en reversa, sin tener medidas de control de tránsito.[18]

En contraste, resolvió que estaba en controversia:

1. Si Bayside Builders y Alpha Demolitions tomaron las medidas de seguridad rutinarias durante la realización de la obra de demolición y acarreo de escombros en la Propiedad #20.

2. Si, por la naturaleza de la obra o el sitio donde se realizó, la demolición y acarreo de escombros en la Propiedad #20 implicó riesgos peculiares que ameritaban la implementación de medidas de seguridad especiales.

3. Si el Sr. Marcelino Bellosta Varady debió prever los riesgos peculiares implicados, si alguno, en la realización de la obra de demolición en la Propiedad #20 y el acarreo de escombros.

4. Si el Sr. Marcelino Bellosta Varady le exigió a Bayside Builders y a Alpha Demolitions, Inc., mediante los

---

[18] Íd., págs. 1876-1881.

contratos suscritos, que tomaran las medidas de seguridad necesarias para atender los riesgos especiales implicados, si alguno, en la obra de demolición y el acarreo de escombros.

5.  Si el Sr. Marcelino Bellosta Varady ejerció diligencia para tomar por sí mismo las medidas de seguridad necesarias para atender los riesgos especiales, si alguno, en la obra de demolición y el acarreo de escombros.

6.  Si el Sr. Marcelino Bellosta Varady ejerció la debida diligencia para asegurarse que Bayside Builders y Alpha Demolitions, Inc. contaban con las destrezas y experiencia suficientes para llevar a cabo la obra de demolición.

7.  Si fue previsible para el Sr. Marcelino Bellosta Varady que Bayside Builders y Alpha Demolitions, Inc. no tomarían las medidas de seguridad para evitar daños a terceros.[19]

El 15 de julio de 2024, MAPFRE radicó una *Moción de reconsideración* en la que solicitó al TPI que reconsiderara el rechazo a su solicitud de sentencia sumaria.[20]

A su vez, el 17 de julio de 2024, el señor Bellosta Varady y Triple S presentaron una *Moción de reconsideración* en la que solicitaron al TPI que reconsiderara la denegatoria de su solicitud de sentencia sumaria.[21]

El 13 de agosto de 2024, la parte recurrida radicó una *Oposición a moción de reconsideración de MAPFRE PRAICO INSURANCE COMPANY* en la que solicitó al foro primario que rechazara la reconsideración.[22]

Ese mismo día, la parte recurrida también presentó una *Oposición a moción de reconsideración de Marcelino Bellosta Varady y Triple S Propiedad Inc.* en la que argumentó que no procedía reconsiderar la determinación.[23]

---

[19] Íd., págs. 1881-1882.
[20] Apéndice de KLCE202400983, Anejo XXIV, págs. 969-985.
[21] Apéndice del KLCE202400995, págs. 1892-1972.
[22] Apéndice de KLCE202400983, Anejo XXV, págs. 986-991.
[23] Apéndice del KLCE202400995, págs. 1973-1982.

El 14 de agosto de 2024, el TPI emitió una *Resolución* en la que declaró No Ha Lugar la reconsideración solicitada por MAPFRE.[24]

A su vez, emitió otra *Resolución* en la que declaró No Ha Lugar la reconsideración promovida por el señor Bellosta Varady y Triple S.[25]

En desacuerdo, el 13 de septiembre de 2024, MAPFRE presentó la *Petición de Certiorari* de epígrafe para impugnar la *Resolución* del 28 de junio de 2024 y le imputó al TPI la comisión de los siguientes errores:

> Primer Error: Erró el TPI al establecer como hechos esenciales y pertinentes sobre los que no hay controversia, hechos que no fueron hechos propuestos por la parte Peticionaria ni por la parte Recurrida, ni resultado de la documentación en apoyo a los escritos de las partes, ni pertinentes a la controversia entre la parte Peticionaria y la Parte Recurrida.
>
> Segundo Error: Erró el TPI al no dar por admitidos aquellos hechos propuestos por la parte Peticionaria y admitidos o no controvertidos por la parte Recurrida.
>
> Tercer Error: Erró el TPI al enumerar como hechos en controversia para denegar la Sentencia Sumaria hechos dirigidos a la responsabilidad, si alguna, de Jesús Burgos Ayala por el accidente; la relación entre Alpha y Sea Shore Environmental LLC.; y, la posible responsabilidad personal del Ing. Jesus Burgos Ayala, por cualquier responsabilidad que se le impute a Sea Shore Environmental LLC., nada de lo cual está relacionado con la clara ausencia de póliza a favor de dicha entidad jurídica.
>
> Cuarto Error: Erró el TPI y abusó de su discreción al denegar una Moción de Sentencia Sumaria, ello a pesar de que en la aplicación del derecho a los hechos incontrovertidos demuestran inequívocamente que es improcedente responsabilizar a MAPFRE, bajo ningún supuesto, de actuación alguna de la entidad jurídica Sea Shore Environmental LLC, por ausencia de póliza y porque a[u]n de haberla, lo cual no ocurre en este caso, es irrefutable la ausencia de responsabilidad de Sea Shore Environmental LLC.

Es su contención que la reclamación en su contra en calidad de aseguradora de Sea Shore debía ser desestimada porque nunca expidió una póliza a nombre de esa compañía, sino a favor del señor

---

[24] Apéndice de KLCE202400983, Anejo XXVI, pág. 992. Notificada y archivada digitalmente en autos el 16 de agosto de 2024.
[25] Apéndice del KLCE202400995, pág. 1983. Notificada y archivada digitalmente en autos el 16 de agosto de 2024.

Jesús Burgos Ayala como individuo. En la alternativa, plantea que, incluso si se resolviera que responde por Sea Shore, no sería posible responsabilizarle porque la parte recurrida no posee evidencia para demostrar que esa compañía incurrió en negligencia o que exista causalidad por la negligencia incurrida por un chofer en una obra rutinaria, contratado por un contratista independiente. Por todo ello, arguye que el foro primario abusó de su discreción y erró en su interpretación del derecho al rechazar desestimar la acción en contra de MAPFRE como aseguradora de dicha compañía.

Inconformes también, el señor Bellosta Varady y Triple S radicaron la otra *Petición de Certiorari* de epígrafe para impugnar la *Resolución* del 1 de julio de 2024 en la que le imputaron al TPI la comisión de los siguientes errores:

> I. Erró el Tribunal de Primera Instancia al denegar la Moción de Sentencia Sumaria presentada por Bellosta y Triple S Propiedad, cuando, a base de las determinaciones de hecho establecidas y de la falta de prueba de la parte demandante, al aplicar las normas de derecho vigente, las partes comparecientes no deben ser llamadas a responder por la ocurrencia de un accidente de tránsito que no era previsible y cuya ocurrencia no guarda relación alguna con la negligencia imputada [a] Bellosta.
>
> II. Erró el Tribunal de Primera Instancia al considerar ciertas aseveraciones realizadas por el perito de la parte demandante para formular hechos en controversia, cuando quedó establecido que el perito no tiene la facultad ni las cualificaciones; ni ofrece base alguna para sustentarlas, siendo meras alegaciones en el vacío y carentes de valor probatorio.

Según la esbozaron, su posición es que el señor Bellosta Varady y, por consiguiente, Triple S no están llamados a responder: (1) por la negligencia de un contratista cuando omite tomar medidas de cuidado rutinarias para ejecutar la labor contratada, especialmente cuando se trata del uso de un camión para limpieza, lo cual no es una actividad peligrosa; (2) porque la falta de cuidado del contratista independiente que no era previsible para el principal; y (3) por la negligencia de un contratista independiente cuando el principal ha ejercido la debida diligencia para asegurarse que el contratado

cuenta con las destrezas y experiencia suficientes para ejecutar la obra, lo cual se cumplió al contratar a Bayside. Por esas razones, argumentan que se debía desestimar la causa de acción en su contra.

El 4 de octubre de 2024, la parte recurrida presentó una *Oposición a la expedición de autos de certiorari consolidados* en la que solicita que rechacemos expedir los recursos solicitados.

Sobre los planteamientos esbozados por MAPFRE, argumenta que: (1) los hechos que esa parte propone como incontrovertidos no atienden el asunto sobre la existencia de la póliza o la ausencia de negligencia o nexo causal; (2) la parte recurrida refutó dichos hechos específicamente; (3) el TPI consideró correctamente toda la prueba admisible que constaba en el expediente del caso para resolver la solicitud de sentencia sumaria; y (4) al así hacerlo, el foro primario correctamente resolvió que existían testimonios contradictorios, cuya credibilidad debía ser dirimida, y que la documentación relacionada con la póliza arrojaba dudas sobre la naturaleza de la cubierta.

Respecto a los argumentos del señor Bellosta Varady y Triple S, alega que: (1) el señor Bellosta Varady debía responder por su propia negligencia al no asegurarse que se tomaran precauciones para evitar los riesgos y daños a la vida y propiedad de los vecinos de la urbanización; (2) estos riesgos eran causados por la actividad inherentemente peligrosa de acarrear escombros mediante camiones de visión limitada y reducida en una calle residencial sin aceras para peatones; (3) el señor Bellosta Varady desconocía de las capacidades de algunas de las compañías contratadas porque no sabía que fueron subcontratadas y, por ello, incumplió su deber de constatar las destrezas y experiencia suficientes de sus contratistas; (4) la peligrosidad de la actividad fue demostrada por el testimonio del perito Baigés Valentín, quien estimó que el señor Bellosta Varady

fue negligente al no implementar o requerir medidas de seguridad ante los riesgos que implicaba la obra; y (5) ante esta Curia, el señor Bellosta Varady no presentó prueba o argumentos que eliminaran o disiparan las controversias materiales formuladas por el TPI.

Consignados los hechos procesales atinentes, pormenorizaremos el derecho aplicable a los recursos de epígrafe.

**III.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Medina Nazario v. McNeil Healthcare LLC***, 194 DPR 723, 728 (2016). Véase, además, ***IG Builders et al v. BBVAPR***, 185 DPR 307, 337 (2012). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. ***Rivera Figueroa v. Joe's European Shop***, 183 DPR 580, 596 (2011).

La Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1,[26] establece las instancias en las que le foro revisor posee autoridad para expedir un auto de *certiorari* sobre materia civil. ***Scotiabank v. ZAF Corp., et al.***, 202 DPR 478 (2019). La citada regla delimita el alcance jurisdiccional del Tribunal de Apelaciones para atender

---

[26] Esta Regla dispone que:

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios (sic), anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

un recurso de *certiorari* que se trate sobre la revisión de dictámenes interlocutorios del Tribunal de Primera Instancia. ***Mun. Caguas v. JRO Contruction, Inc.***, 201 DPR 703 (2019).

Si el asunto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra*, debemos pasar entonces a un segundo escrutinio. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso.

Con el fin de que podamos ejercer de manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.40, establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.[27]

**B.**

El mecanismo procesal de la sentencia sumaria surge de la Regla 36.1 de Procedimiento Civil, *supra*, R. 36.1. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales que no requieren ventilarse en un juicio plenario. ***Rodríguez García v. UCA***, 200 DPR 929, 940 (2018); ***Bobé et al. v.***

---

[27] Esta Regla dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

*UBS Financial Services*, 198 DPR 6, 20 (2017); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). Mediante este mecanismo, una parte puede solicitar que el tribunal dicte sentencia sumaria de la totalidad de la reclamación o de parte de esta. De esta forma, se promueve la descongestión de calendarios, así como la pronta adjudicación de controversias cuando una audiencia formal resulta en una dilación innecesaria. *Vera v. Dr. Bravo*, 161 DPR 308, 331-332 (2004).

Ahora bien, el mecanismo de sentencia sumaria solo está disponible para la disposición de aquellos casos que **sean claros**; cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda; y que solo reste por disponer las controversias de derecho existentes. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994). Asimismo, al evaluarse los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia, consciente en todo momento de que su determinación puede privar a una de las partes de su día en corte. *León Torres v. Rivera Lebrón,* 204 DPR 20, 44 (2020). De la mano con este precepto del debido proceso de ley, el juzgador deberá utilizar el principio de liberalidad a favor del opositor de la moción, lo cual implica que, de haber dudas sobre la existencia de controversias de hechos materiales, entonces deberán resolverse a favor de la parte que se opone a la moción de sentencia sumaria. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 138 (2015); *Ramos Pérez v. Univisión*, 178 DPR 200, 216-217 (2010).

Para prevalecer en una moción de sentencia sumaria, su promovente tiene que establecer su derecho con claridad y debe demostrar que no existe controversia en cuanto a ningún hecho material, o sea, ningún elemento de la causa de acción. *Meléndez González et al. v. M. Cuebas*, supra, pág. 110. Por hechos materiales se entienden aquellos que pueden afectar el resultado de

una reclamación de acuerdo con el derecho sustantivo. ***Ramos Pérez v. Univisión***, supra, pág. 213. La controversia sobre el hecho material debe ser real. Íd. A saber:

> [U]na controversia no es siempre real o sustancial, o genuina. La controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. La fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria adecuadamente presentada sólo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor. Si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria. Íd., págs. 213-214, *citando a* P. E. Ortiz Álvarez, *Hacia el uso óptimo de la sentencia sumaria*, 3 (Núm. 2) Forum 3, 8 (1987).

En suma, deberá demostrar que: (1) no es necesario celebrar una vista; (2) el demandante no cuenta con evidencia para probar algún hecho sustancial; y (3) procede como cuestión de derecho. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 2017, pág. 317.

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real en cuanto a algún hecho material a la controversia y, en ese sentido, no es cualquier duda la suficiente para derrotar la solicitud. ***Meléndez González et al. v. M. Cuebas***, supra. En efecto, la duda debe ser tal que permita concluir que existe una controversia real y sustancial sobre los hechos materiales. Íd., citando a ***Ramos Pérez v. Univisión,*** supra, pág. 214. De esta manera, central entre las responsabilidades de la parte promovida se encuentra que debe puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición. ***León Torres v. Rivera Lebrón,*** supra. Es decir, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa". Íd. De esta forma, no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos

que sustenten los hechos materiales en disputa. ***SLG Zapata-Rivera v. JF Montalvo***, supra; ***Ramos Pérez v. Univisión***, supra, pág. 215; ***Cruz Marcano v. Sánchez Tarazona***, 172 DPR 526, 550 (2007). Lo anterior, además, es cónsono con los requerimientos establecidos por las Reglas de Procedimiento Civil, *supra*, en lo pertinente a este mecanismo procesal.

En síntesis, ha quedado establecido que los tribunales no podrán dictar sentencia sumaria en cuatro situaciones: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando existan alegaciones afirmativas en la demanda sin refutar; (3) cuando surja de los propios documentos que acompañan la moción en solicitud de sentencia sumaria que existe una controversia sobre algún hecho material o esencial; o (4) cuando no proceda como cuestión de Derecho. ***Oriental Bank v. Perapi***, 192 DPR 7, 26-27 (2014).

Entretanto, desde el punto de vista procesal, la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4, impone que, si en virtud de una moción de sentencia sumaria no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y resulta necesario celebrar un juicio, entonces es obligatorio que el tribunal resuelva la moción realizando una determinación: (1) de los hechos esenciales y pertinentes sobre los que no hay controversia sustancial; (2) de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos; (3) de hasta qué extremo la cuantía de los daños u otra reparación no está en controversia; y (4) ordenando los procedimientos ulteriores que entienda justos, lo cual podría incluir una vista evidenciaria limitada a los asuntos en controversia. En dicho caso, al celebrarse el juicio se considerarán probados los hechos especificados, se procederá en conformidad y, a base de las determinaciones

realizadas en virtud de esta regla, se dictarán los remedios que correspondan, si alguno. Íd.

De otra parte, en ***Meléndez González et al. v. M. Cuebas***, supra, el Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil, *supra*, y los criterios que la jurisprudencia le exige al foro primario. Íd., pág. 118. Asimismo, deberá examinar el expediente de la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. Íd. Ahora bien, reconoció que el foro apelativo está limitado, toda vez que no podrá tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni podrá adjudicar los hechos materiales en controversia. Íd.

En segundo lugar, prescribió que el Tribunal de Apelaciones deberá revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra.* Íd.

En tercer lugar, mandató que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones deberá revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4. Íd.

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal

de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el Derecho. Íd., pág. 119.

**IV.**

En los recursos consolidados de epígrafe, tanto MAPFRE como el señor Bellosta Varady y Triple S impugnan determinaciones del TPI en las que se rechazaron sus respectivas solicitudes de sentencia sumaria desestimatoria a su favor.

Para MAPFRE, el foro primario erró: (1) al establecer hechos incontrovertidos que no fueron propuestos por ella o la parte recurrida y que no surgen de la documentación presentada en apoyo de sus posiciones; (2) al no admitir los hechos que propuso y que no fueron controvertidos por la parte recurrida; (3) al enumerar como controvertidos hechos relacionados a la responsabilidad del señor Burgos Ayala, Alpha Demolitions, y Sea Shore; y (4) porque los hechos incontrovertidos demuestran inequívocamente que no procede responsabilizar a MAPFRE por ausencia de una póliza que cubriera a Sea Shore, a quien tampoco se le puede responsabilizar.

Por su parte, para el señor Bellosta Varady y Triple S, el TPI erró porque: (1) el accidente de tránsito no era previsible y su ocurrencia no guardó relación con la negligencia que se le imputa como dueño de la obra; y (2) consideró aseveraciones realizadas por el perito Baigés Valentín, quien, según arguyó, no tiene la facultad, las cualificaciones o la base para sustentarlas.

Tras un análisis objetivo, sereno y cuidadoso del expediente, en correcta práctica adjudicativa apelativa, a la luz de los criterios esbozados en la Regla 52.1 de Procedimiento Civil, *supra*, y en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, resolvemos que debemos abstenernos de ejercer nuestra función revisora y rechazar intervenir con la determinación del TPI.

Un examen sosegado del expediente del caso ante nuestra consideración y de la determinación recurrida, no arroja error

alguno que amerite nuestra intervención. No surge de los autos que el TPI haya incurrido en error, prejuicio, parcialidad o que haya abusado de su discreción. La determinación del foro primario fue esencialmente correcta en derecho al declarar No Ha Lugar las solicitudes de sentencia sumarias promovidas por MAPFRE y el señor Bellosta Varady y Triple S, respectivamente. El foro primario cumplió con la normativa vigente, aplicable a la disposición de mociones de sentencia sumaria, toda vez que basó sus determinaciones de hechos en los argumentos de las partes, la prueba presentada por estas y la documentación disponible en el expediente del caso. Ello es mandatado tanto por las Reglas de Procedimiento Civil, *supra*, como la jurisprudencia. Cabe recalcar que los tribunales, al determinar si existen controversias de hechos que impiden dictar sentencia sumaria, están llamados a analizar los documentos que acompañan la solicitud, así como <u>los que obren en el expediente del tribunal</u>. ***Ramos Pérez v. Univisión,*** supra, pág. 216, citando a ***Cruz Marcano v. Sánchez Tarazona,*** supra, pág. 550.

Además, el TPI plasmó claramente los hechos en controversia que le impidieron disponer sumariamente del caso, los cuales versan directamente con la posible responsabilidad de las partes peticionarias en ambos recursos. Consecuentemente, no intervendremos con la discreción del foro primario en esta etapa de los procedimientos.

**V.**

Por los fundamentos pormenorizados, se deniega la expedición de los autos de *certiorari* solicitados.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones